h-AMY, Judge.
The plaintiff filed suit seeking repayment of wages paid to the defendant after she left her employment with the family business. The trial court ruled in favor of the defendant, finding no indication that the defendant agreed to repay those wages after her personal share of the business was valued and sold. However, the trial court denied the defendant’s reconventional demand in which she sought wages continuing through the time of trial for work performed in her capacity as a member of the company’s Board of Directors. Both parties raise issues on appeal. The plaintiff has also filed a motion for contempt and return of brief, alleging that the defendant’s brief includes inappropriate statements and references. For the following reasons, we affirm the judgment of the trial court and deny the motion for contempt and return of brief.
Factual and Procedural Background
This matter arises from the buy out of the defendant, Linda Long Minton, from the family’s business, Long’s Preferred Products, Inc. The record indicates Ms. Minton and her brother, Julian W. Long,[1] were each fifty percent shareholders in the family business in July 1997, the date the buy out process began. At that time, Ms. Minton served as the company’s Vice-President, while Julian served as President. Both received a salary from the company.
The buy out of Ms. Minton’s portion of the company arose on July 17-18, 1997, due to tensions between Ms. Minton and one of the company’s employees. Due to Ms. Minton’s inability to continue in the work environment, she did not return to a regular work schedule at the company. Julian agreed to buy Ms. Minton’s share |2in the company. However, the buy out was to occur only after an inventory was taken and a value placed on the company. During the valuation period, Ms. Minton continued to receive her $4500 monthly salary. The plaintiff, Long’s Preferred Products, asserts that the continuation of the salary was made with the understanding that the accrued salary would be deducted from the value of Ms. Minton’s share at the time of the buy out. Ms. Minton disputes that an agreement was reached as to repayment.
*1067 .Long’s Preferred Products filed suit, seeking repayment of the salary paid to Ms. Minton after her job functions ceased at the company. Ms. Minton filed a recon-ventional demand, alleging that the salary reflected her ■ continued duties as a member of the Board of Directors. Following a bench trial, the trial court concluded that no oral or written agreement existed requiring Ms. Minton to repay the wages at issue. Furthermore, with regard to the reconventional demand, the trial court concluded that, although Ms. Minton remained a member of the Board of Directors after she ceased her employment functions, the evidence indicated that the members of the board were not compensated for their duties. Rather, the salary was related to her function as an employee.
Long’s appeals, presenting the following issues for review:
[1.] Did the trial court err in holding that Ms. Minton did not agree to repay the monies she received from Long’s Preferred Products, Inc.?
[2.] Did the trial court err when it held that P# 5, P# 6, and P# 7 was not the agreement that the parties had originally agreed to?
Ms. Minton answered the appeal, asserting that:
The Trial Court erred in finding that Ms. Linda Minton was compensated as an employee and not as an officer and director of Long’s Preferred Products, Inc.
laSubsequent to the filing of Ms. Minton’s brief, Long’s filed a “Motion and Order for Contempt and Return of Brief for Violation of Uniform Rule — Courts of Appeal 2-12.4 and 2-16.3.” Long’s alleged that inappropriate reference was made to an unpublished case and that certain allegations contained in Ms. Minton’s brief are viola-tive of Uniform Rules — Courts of Appeal, Rule 2-12.4, which requires that briefs be “free from vile, obscene, obnoxious, or offensive expressions, and free from'insulting, abusive, discourteous or irrelevant matters or criticism of any person .... ” The motion was deferred to the merits of the appeal.
Discussion

Repayment of Salary

Long’s first contends that the payment of Ms.. Minton’s salary between the July 18, 1997 cessation of her work duties until the date of the buy out was continued due to an agreement that the sum would be deducted from the amount paid to Ms. Minton at the time of the buy out. Long’s contends that the trial court’s determination that there was no such agreement was in error. In particular, Long’s asserts that Ms. Minton and her brother, Julian, reached an initial, oral agreement whereby Ms. Minton would continue to receive her salary which would be deducted from the proceeds of the buy out. Long’s points to an unsigned agreement that includes language requiring repayment, asserting that the agreement memorializes the original agreement. Testimony indicates that Ms. Minton forwarded the buy/sell agreement referenced by Long’s to an attorney for review, but that it was never signed. Long’s contends that the attorney’s attention to typographical errors in the agreement, but lack of any written objection to the inclusion of the repayment language, indicates that the concept of repayment was a part of Ms. Minton and Julian’s original'l ¿agreement. Ms. Minton disputes this assertion, contending that she did not sign the agreement due to her disagreement with the repayment condition.
Further, Long’s points to portions of Ms. Minton’s testimony which, it alleges, reveal internal inconsistencies indicating a *1068 lack of credibility. The majority of the statements alleged to be “vague, unsubstantiated, and contradictory” relate to various meetings of the board Ms. Minton alleged occurred. Long’s argues that, in light of Julian’s clear statements regarding the buy/sell terms agreed to, Ms. Minton’s contradictory testimony lacks sufficient weight for the trial court to have ruled in her favor on this issue.
In ruling, the trial court referenced the Louisiana Civil Code’s requirements of consent, capacity, and cause, see La.Civ. Code arts.1918, 1927, and 1971,[2] as well as Article 1971’s instruction that: “Parties are free to contract for any object that is lawful, possible, and determined or determinable.” The trial court then reviewed the testimony offered at trial, explaining:
| ¿Testimony at trial established that Linda Minton and Julian W. Long discussed the buy-out of Mrs. Minton’s shares of stock. The parties admitted at trial that they verbally agreed that Mrs. Minton would continue to receive her salary during the buy-out. Therefore, the parties admittedly contracted for the payout of Four Thousand Five Hundred and No/100 Dollars ($4,500.00) per month to Mrs. Minton during the period between the agreement to buy back Mrs. Min-ton’s shares of stock and the completion of the buy out. Both parties had capacity as well as consent and they contracted for a lawful cause and determined object. Therefore, a verbal contract was confected between the parties. At some point afterwards a written contract was drawn up for the parties to sign. However, the contract contained a provision that required Mrs. Minton to repay the Forty-Four Thousand and No/100 Dollars ($44,000.00) in salary she received from the time of the agreement to buy back the shares of stock until the time the buy-out was completed. Mr. Ellis Saybe, an Alexandria attorney, was given the document to review for Mrs. Min-ton, during which time Mr. Saybe circled and corrected a typographical error in the contract. Plaintiff contends that Mrs. Minton admitted that there was an agreement to repay the monies when she testified that she gave the contract to Mr. Saybe because she wanted him to look at it before she signed it and did not mark through the portion requiring her to repay the monies. However, the Court does not find this argument persuasive. Mrs. Minton testified that she refused to sign the contract because she had not agreed to repay the interim salary. Mr. Julian W. Long also admitted that the reason Mrs. Minton refused to sign the contract was due to the provision requiring her to repay the salary. Furthermore, it would not be logical for Mrs. Minton to accept the salary payments as a loan, pay taxes on the monies thereby only receiving a net amount of the payments and then repay the gross amount to the Corporation. *1069 Additional evidence of the lack of agreement to repay the funds arises from the testimony of Julian E. Long, Mrs. Min-ton and Mr. Julian W. Long’s father, who testified that he informed Mr. Julian W. Long to remove the Forty-Four' Thousand and No/100 Dollars ($44,-000.00) from the amount Mrs. Minton would receive as the purchase price for her shares of stock because she did not work for that money and should not receive it. Mr. Julian E. Long told his son this at the time when the latter,was preparing a written agreement for the purchase price of Mrs. Minton’s shares of stock, not at a time prior to the oral agreement between Mr. Julian W. Long and Mrs. Minton. It appears that this occurred at approximately the time the relations with Mrs. Minton’s father and brother, Mr. Julian E. Long and Mr. Julian W. Long, respectively, became strained to the point of no return. It was also around this time when Julian W. Long changed the locks so that Mrs. Minton no longer had access to the Corporation and when Mrs. Minton’s salary was abruptly stopped, approximately March 1998. It was not long after this when it became obvious that the agreement to buy-out Mrs. Minton’s stock had .fallen through. Mrs. Minton thereafter withdrew the offer [for Julian] to purchase her Corporation stock. The | fiCourt had an opportunity to view the parties and judge their credibility during trial and, after reviewing the evidence, the Court is of the opinion no agreement existed that required Mrs. Minton to repay the monies she received as salary for that eight (8) month period of buy-out negotiations. Accordingly, the Court finds that the contract to pay Mrs. Minton her salary from the time of the agreement to buy back her stock until the completion of this event did not encompass the obligation for Mrs. Min-ton to repay the monies she received during this period. As such, Mrs. Min-ton is entitled to retain the amount she was paid in salary during the time of the buy-out negotiations.
The above reasons for ruling reflect the trial court’s acceptancé of Ms. Minton’s testimony over the version of events offered by Julian. The Louisiana Supreme Court has noted that, “[w]here there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review .... ” Parish Nat’l Bank v. Ott, 02-1562, p. 7 (La.2/25/03), 841 So.2d 749, 753. This remains true even in the event the appellate court finds that it may have weighed the evidence differently if it had been sitting as the trier of fact. Id. Only when the trial court’s factual determinations are clearly wrong will the appellate court substitute-its own findings for that of the trial court. Our review of the record reveals no such error.
Long’s asserts that Ms. Minton’s testimony was unreliable due to what it contends were internal contradictions. However, we find little merit in the contention that any such inconsistencies or lack of clarity in her recollection of meetings of ah informally operated board' necessarily bear on the central question of whether the parties agreed that, the continued salary would be deducted from the proceeds of the sale of her share of the company. The testimony, taken as a whole, supports the trial court’s determination that she and Julian agreed that her salary would continue during the valuation process. However, the trial court concluded that this initial agreement did not include a provision that the salary would be repaid from the proceeds. This l7is supported by her testimony that she did not sign the written agreement presented to her as it included this term. Although *1070 Julian’s testimony was contrary to this, the trial court noted that it was able to view the witnesses and make credibility determinations. Furthermore, although Long’s contends that the trial court gave inadequate consideration to the unsigned buy/ sell agreement and related documents, the reasons for ruling reveal that consideration was given to this evidence. However, the trial court found that the documents were more supportive of Ms. Minton’s position. As the record supports its findings, we find no clear error in the trial court’s resolution of the credibility issue in favor of Ms. Minton.
This assignment lacks merit.

Nature of Compensation

In her reconventional demand, Ms. Min-ton sought recovery for wages until the time of trial. She contended that these wages were owed after the buy out as her compensation with the company was reflective of her position as an officer of the company and that it was not compensation for her employment-related duties. The trial court denied this request, finding that the officers of the company were not compensated for their work in that capacity. In her answer to the appeal, Ms. Minton questions this finding.
In denying recovery on the recon-ventional demand, the trial court reasoned:
Ms. Minton claims that she had a verbal contract of employment with Long’s Preferred Products, Inc. and that she is owed this salary because she continued to hold a position as officer and director of the Corporation from the time her salary was stopped to date. It is accurate that Mrs. Minton continued to serve as director of the Corporation. Mrs. Minton’s purported discharge on Mary [sic] 14, 1998 by the corporate board was nullified in Civil Suit Number 196,819, on the docket of the Ninth Judicial District Court, the Honorable Ross Foote, Presiding. That Judgment was affirmed by the Third Circuit Court of Appeal and amended to specifically declare Ms. Minton a director of the | «Corporation. However, while the Corporation’s tax returns on their face show officer compensation, the evidence established that the officers and directors at the Corporation are not compensated as such. Mrs. Minton was paid as an employee at the Corporation, not as an officer and director. It was stipulated by the parties Mrs. Minton’s salary as an employee of the Corporation from October 1991 through April 1997 was Two Thousand Five Hundred and No/ 100 Dollars ($2,500.00) per month. Mrs. Minton was appointed Vice-President and Secretary-Treasurer of the Corporation on February 24, 1992 while her salary remained the same until May 1997 when it was raised to Four Thousand Five Hundred and No/100 Dollars ($4,500.00) per month. It was additionally stipulated that Ms. Tracy Percy did not receive an increase in salary when she was appointed Secretary-Treasurer in May 1998 nor did Mrs. Eva Long receive an increase in salary when she was appointed Vice-President of the Corporation. Mr. Julian W. Long also testified that he received no salary increase when he became an officer and director of the Corporation. Mrs. Min-ton discontinued her day-to-day duties as an employee of the Corporation when she agreed to sell her stock, although she remained an officer and director. However, the Court is of the opinion that Mrs. Minton was compensated as an employee, not as an officer and director of the Corporation. Accordingly, Mrs. Minton is not entitled to an award for her salary from March 1998 to date.
Our review of the testimony and related exhibits supports the above-factual conclu *1071 sions. For example, despite conflicting testimony from Ms. Minton and Julian regarding the nature of their compensation, other members of the board, ie., Tracy Percy or Eva Long, did not receive an increase in their salary when their position changed from employee only, to that of both employee and board member. This assignment lacks merit.

Motion for Contempt and Return of Brief

Long’s filed a motion with this court, alleging that references contained in Ms. Minton’s brief were inappropriate and violative of the Uniform Rules of the Courts of Appeal. Specifically, the motion complains of reference to a decision of this court rendered in a suit by these same parties, relating to another difficulty with the business. The motion contends that the unpublished opinion was inappropriately 13referenced and mention was not made to the case’s publication status. Long’s asserts both that the appellee brief should be returned and that sanctions should be imposed.
Relevant to consideration of the motion are Uniform Rules — Courts of Appeal, Rules 2-12.4 and 2-16.3. Rule 2-12.4, which addresses the requirements of briefs filed with the court, provides, in part:
The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class or persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
Furthermore, with regard to published/unpublished cases, Rule 2-16.3 provides, in part:
C. Opinions marked “Not Designated for Publication” shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Opinions marked “Not Designated for Publication” shall be filed in the clerk’s office as public records.
After review of the appellee’s brief and references made to the other proceeding, we do not find that those references require return of the brief or imposition of sanctions. Although the opinion is unpublished, it involves the conduct of these parties in another, arguably related matter. In fact, the proceeding is referenced by the trial court in his reasons for ruling. A portion of Rule 2-16.3 permits reference to unpublished opinions if they stem from related litigation. This court is able to assess the relevance/appropriateness of the references and determine whether any weight is to be given the information in question.
With regard to Long’s assertion that a statement in Ms. Minton’s brief questioning the veracity of statements made by Julian and his father, Julian E. Long, 110we point out that both briefs call into question the truthfulness or credibility of the opposing party’s statements. We do not find sanctions in this regard appropriate. The motion is denied.
DECREE
For the foregoing reasons, the decision of the trial court is affirmed. The motion for contempt and return of brief is denied. All costs of this matter are assessed equally between the parties, Long’s Preferred Products, Inc. and Linda Long Minton.
AFFIRMED. MOTION DENIED.
THIBODEAUX, C.J., dissents in part and assigns written reasons.

. The father of Ms. Minton and Julian W. Long, Julian E. Long, was also a witness at the trial in this matter. Julian W. Long will hereinafter be referred to as "Julian” while Julian E. Long will be referenced by use of his full name.

. The Articles provide:
Art. 1918. General statement of capacity
All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting.
Art.1927. Consent
A contract is formed by the consent of the parties established through offer and acceptance.
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
Art. 1966. No obligation without cause
An obligation cannot exist without a lawful cause.