# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-516

JOANN PRUDHOMME

VERSUS

SAMMY PRUDHOMME

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 64978-A
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**H. Douglas Hunter**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**Post Office Drawer 1329**
**Opelousas, LA 70571-1329**
**(337) 948-8201**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sammy Prudhomme**

**Kathy F. Meyers**
**Post Office Drawer 450**
**Ville Platte, LA 70586**
**(337) 363-5596**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Joanna Prudhomme**

AMY, Judge.

The defendant was found in contempt of court for not paying $9,190.50 in support arrearage. The defendant made an initial payment of $3,500.00. He argues that he and the plaintiff subsequently entered into a settlement agreement whereby he would pay $3,000.00 to the plaintiff and deliver a riding lawnmower to her. This agreement, which was to extinguish the arrearage, was ruled invalid by the trial court. On subsequent motion, the defendant was again found in contempt of court, and the trial court ordered that he pay the remaining arrearage. The defendant appeals this latter judgment. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that the plaintiff, Joanna Christy Weeks Prudhomme, and the defendant, Sammy Curtis Prudhomme, were married in September 1981. Ms. Prudhomme filed for divorce in May 2003; in her petition, she requested spousal support as well as child support for the parties' three minor children. The judgment of divorce was signed on January 16, 2004, and an income assignment order was issued April 8, 2004, whereby $1,476.00 per month for child support was to be deducted from Mr. Prudhomme's wages.

On June 23, 2004, Ms. Prudhomme filed a rule for contempt of court for failure to pay child support and spousal support. In its judgment dated December 30, 2004, the trial court found that "Sammy Curtis Prudhomme is delinquent and in arrears in the amount of . . . $9,190.50[,] and that said delinquent amount is hereby made executory immediately, together with legal interest thereon from date of judicial demand." The trial court ordered Mr. Prudhomme to serve ninety days in parish jail, which was to be suspended if the arrearage was paid within ninety days of the judgment. He was also ordered to pay $1,000.00 in attorney fees.

On January 7, 2005, Mr. Prudhomme filed a motion for new trial, which the trial court denied. Shortly thereafter, Mr. Prudhomme tendered $3,500.00 to Ms. Prudhomme. As the entire arrearage was not paid, Ms. Prudhomme filed another rule for contempt on April 12, 2005, which was later continued without date. Two weeks later, Mr. Prudhomme filed a motion and order for suspensive and/or devolutive appeal.

According to Mr. Prudhomme, on May 16, 2005, he and Ms. Prudhomme allegedly entered into an agreement whereby the parties "came to a mut[u]al agreement regarding all arre[a]rages and all community settlements[.]" According to the agreement, Mr. Prudhomme was to pay Ms. Prudhomme $3,000.00 and deliver a riding lawnmower to her. Mr. Prudhomme maintained that he fulfilled his obligations under the agreement and that because of this, he did not deem it necessary to pay the costs for his appeal.

Arguing that no settlement had been reached, Ms. Prudhomme filed a motion and order to dismiss Mr. Prudhomme's appeal of the December 30, 2004 judgment for failure to pay court costs. Mr. Prudhomme opposed the motion, arguing that Ms. Prudhomme signed the settlement agreement, he fulfilled his obligations, and he relied on this agreement to his detriment. Following a hearing, the trial court granted the motion to dismiss.

Ms. Prudhomme subsequently requested that her rule for contempt, which was previously filed on April 12, 2005, be reset. Mr. Prudhomme responded by filing an exception of prematurity and an answer. At the hearing on the rule for contempt, Mr. Prudhomme proffered testimony regarding a $3,000.00 payment allegedly made

2

pursuant to the terms of a purported settlement agreement.[1] At that time, Mr. Prudhomme explained that he had paid $3,500.00 toward the arrearage. He testified that Ms. Prudhomme told him that the $1,000.00 in attorney fees was paid from this amount.

Ms. Prudhomme acknowledged in her proffered testimony that she received and negotiated the $3,000.00 check from Mr. Prudhomme; however, she indicated that the terms of the settlement agreement were not fulfilled because Mr. Prudhomme did not return the riding lawnmower "as we discussed." Furthermore, according to Ms. Prudhomme's proffered testimony, she informed Mr. Prudhomme that her attorney had already taken the $1,000.00 in attorney fees out of the $3,500.00 that he had given to her. She testified that she explained to Mr. Prudhomme that "he owed her [Ms. Prudhomme's attorney] the money back because she owed me."

At the contempt hearing, Ms. Prudhomme testified that despite some payments made to her, Mr. Prudhomme owed $3,142.50 in arrearage, excluding the $1,000.00 in attorney fees.

In its January 31, 2006 judgment, the trial court ordered Mr. Prudhomme to pay arrearage in the amount of $3,142.50 and $1,000.00 in attorney fees from the previous judgment as well as an additional $500.00 in attorney fees for the costs of those proceedings. The trial court sentenced Mr. Prudhomme to sixty days in jail. It is from this judgment that Mr. Prudhomme appeals, asserting two assignments of error:

1. The trial court erred in finding that the settlement agreement entered into between the parties on May 16, 2005 is invalid.

---

[1] Although this testimony was proffered, we include it in our discussion of the case because of the nature of Appellant's arguments.

2.  The trial court erred in the January 31, 2006 judgment in calculating the amount remaining to be paid by Sammy Curtis Prudhomme under the judgment of December 30, 2004.

## Discussion

*Settlement Agreement*

Mr. Prudhomme argues that the settlement agreement that he and Ms. Prudhomme entered into on May 16, 2005, was valid and that the terms of the agreement were met. He specifically points out that Ms. Prudhomme negotiated the $3,000.00 check, the memo line of which contained the notation: "Final Payment per Agreement of 5/16/05." Mr. Prudhomme contends that this payment, along with the delivery of the riding lawnmower, released him of his obligation to pay the remaining arrearage. He argues that Ms. Prudhomme's negotiation of the check indicates that she intended this matter to be settled and this constitutes a compromise of their dispute. Accordingly, he asserts that he did not deem it necessary to pay the costs of his appeal.

Louisiana Civil Code Article 3071 provides in pertinent part:

A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. This agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

In *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, pp. 24-25 (La. 4/12/05), 907 So.2d 37, 55, the supreme court stated:

A compromise agreement, like other contracts, is the law between the parties, and must be interpreted according to the parties' true intent.

4

*Boyette v. Riverwood Int'l*, 27,980 (La.App. 2 Cir. 3/1/96), 669 So.2d 730, 733, *writ granted in part, on other grounds, and denied in part*, 96-1418 (La.10/4/96), 679 So.2d 1366. The party who attempts to rely on the existence of a compromise agreement bears the burden of proof to show that the requirements for a valid compromise are present, including that the parties intended to settle. *Id.*

"The parties' intent in executing a compromise is normally discerned from the four corners of the document; extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument." *Randall v. Martin*, 03-1311, p. 5 (La.App. 5 Cir. 2/23/04), 868 So.2d 913, 916.

The settlement letter stated as follows:

I Joanna Christy Weeks Prudhomme and Sammy Curtis Prudhomme on 5/16/05 came to a mutal [sic] agreement regarding all arrerages [sic] and all community settlements as stated below.

- $3000.00 cash with $1500.00 being paid upon settment [sic] of judgement [sic] with $200.00 a month paid thereafter until remaing [sic] balance is paid in full.

- 1 riding lawnmower to be returned to Joanna Christy Weeks Prudhomme upon judgement [sic].

Signed this day on 5/16/05
/s/ Joanna Christy Weeks Prudhomme
/s/ Sammy Curtis Prudhomme

Witness[es]
/s/ Paula Prudhomme
/s/ Ferren Prudhomme

Here, the trial court found the settlement agreement invalid because Mr. Prudhomme "did not comply and carry out his end of the bargain." The trial court dismissed Mr. Prudhomme's appeal because "[i]n addition to not complying with the agreement[,] he did not pay the costs." The trial court's decision will not be overturned absent manifest error. *Randall*, 868 So.2d 913.

In part, Mr. Prudhomme is relying on the settlement letter as a defense to payment of $9,190.50, the amount the trial court determined he owed in arrearage. In order to prevail, Mr. Prudhomme must show that the settlement agreement complied with La.Civ.Code art. 3071 and that he and Ms. Prudhomme intended to settle their claims. *Suire*, 907 So.2d at 55.

The settlement letter stated that Mr. and Ms. Prudhomme "came to a mutal [sic] agreement regarding all arrerages [sic] and all community settlements[.]" According to the terms of the agreement, Mr. Prudhomme was to pay Ms. Prudhomme $3,000.00 in cash with $1,500.00 being paid upon settlement of judgment and the remainder paid in $200.00 monthly installments. In addition, he was to return a riding lawnmower to Ms. Prudhomme upon judgment.

The record supports a finding that the terms "upon settlement of judgment" and "upon judgment" are indicative of a conditional obligation. "A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La.Civ.Code art. 1767. Because it is unclear from the settlement agreement what the phrase "upon settlement of judgment" means, the court may look to extrinsic evidence to explain the terms of the agreement and to find the parties' intent as it relates to settling their claims. *Randall*, 868 So.2d 913; La.Civ.Code art. 2046. The record, however, does not contain any such evidence. For ease of discussion, however, we note that at the hearing for contempt of court, Mr. Prudhomme's attorney acknowledged that the terms of the settlement agreement were subject to a condition. He stated:

> Mr. Prudhomme agreed to pay this money and deliver the lawn mower when the Judgment was signed, we still don't have a Judgment so under this enforceable agreement Mr. Prudhomme didn't even have to pay the $3,000.00 yet because it was conditioned upon her signing the Judgment

6

which is a Satisfaction of Judgment saying that your Judgment on the arrearage has been satisfied, so that's the resolutory [sic] condition, her signing the Judgment, she never would but he went ahead and complied with the agreement anyway. . . . [W]e've sent the Satisfaction of Judgment way back last summer to them and they refused to sign it.

In response, Ms. Prudhomme's attorney explained:

Judge, last summer when that Satisfaction of Judgment was sent to us that was sent prior to the hearing that we had, we wouldn't sign it because (inaudible) Mr. Prudhomme to do all of the things that the Court had previously ordered him to do, we had had a hearing, you found him in arrears and in an excess of $9,000.00, plus some other costs. Without anything else, I get a letter in the mail with an, a so-called Consent Judgment attached from Mr. Hunter saying, if you sign this Mr. Prudhomme will pay half of what the Judge ordered and everything will go away, so of course we didn't sign it because . . . she wants all of the money that you ordered[.]

These statements seem to illustrate that the parties' interpretation of "upon judgment" meant "satisfaction of judgment" or "consent judgment." Therefore, Mr. Prudhomme apparently agreed to pay Ms. Prudhomme $3,000.00 and return the lawnmower to her when a satisfaction of judgment was signed by both parties. As there is no indication that the parties agreed upon a time period in which the judgment was to be signed, the terms of the agreement can be viewed as needing to be fulfilled within a reasonable time. *See* La.Civ.Code art. 1773.[2]

The record indicates that on July 19, 2005, Mr. Prudhomme tendered a check in the amount of $3,000.00 to Ms. Prudhomme. As of this date, no satisfaction of

---

[2] Louisiana Civil Code Article 1773 provides in pertinent part:

If the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed.

If no time has been fixed for the occurrence of the event, the condition may be fulfilled within a reasonable time.

Whether or not a time has been fixed, the condition is considered to have failed once it is certain that the event will not occur.

judgment had been signed. This failure of the suspensive condition, *i.e.*, the signed satisfaction of judgment, is fatal to the enforcement of the agreement. La.Civ.Code art. 1773. Furthermore, according to Ms. Prudhomme, Mr. Prudhomme did not return the lawnmower until January 9, 2006, approximately eight months after the settlement agreement was signed, an arguably unreasonable period of time. Thus, the trial court was not manifestly erroneous in finding that the settlement agreement was invalid.

This assignment is without merit.

*Amounts Owed*

As an alternative argument, Mr. Prudhomme contends that the "trial court erred in the January 31, 2006 judgment in calculating the amount remaining to be paid by [Mr.] Prudhomme under the judgment of December 30, 2004." In the December 30, 2004 judgment, the trial court ordered Mr. Prudhomme to pay Ms. Prudhomme $9,190.50 as it related to arrearage and $1,000.00 in attorney fees. He contends that should "this Honorable Court find that no binding settlement agreement exists, this remittance [of $3,000.00 per the settlement agreement] left a balance on the December 30, 2004 judgment of $3,690.50[.]" According to Mr. Prudhomme, he arrived at this figure by subtracting this $3,000.00 remittance as well as a previous payment of $3,500.00. Mr. Prudhomme alleges that $1,000.00 in attorney fees was paid from the $3,500.00 payment and that he, therefore, does not owe these fees.

In its January 31, 2006 judgment, the trial court found Mr. Prudhomme in "contempt of court for failing to comply with the Judgment and Reasons for Judgment dated October 27, 2005 [sic], finding him in arrears on child support and liable for attorney's fees and court costs." He was ordered to pay $3,142.50 in arrearage. In addition to paying the $1,000.00 in attorney fees, Mr. Prudhomme was

ordered to pay an additional $500.00 in attorney fees as well as court costs. Further, he was sentenced to sixty days in parish jail.

At the first hearing for contempt of court, the trial court determined that Mr. Prudhomme owed $9,190.50 in arrearage. He was also ordered to pay $1,000.00 in attorney fees. According to Mr. and Ms. Prudhomme's proffered testimony, Mr. Prudhomme initially submitted $3,500.00 to Ms. Prudhomme. The parties further testified that Mr. Prudhomme subsequently tendered a $3,000.00 check to Ms. Prudhomme, which she negotiated. A copy of the check was entered into evidence.

Although Ms. Prudhomme stated in her proffered testimony that she negotiated the $3,000.00 check, she alleged that the terms of the settlement agreement were not complied with, *i.e.*, the riding lawnmower was returned "very late."

Ms. Prudhomme's testimony at the contempt hearing indicates that the $3,000.00 check and the $3,500.00 that Mr. Prudhomme previously submitted have been applied toward the arrearage. During the contempt hearing, Ms. Prudhomme was asked if she knew how much Mr. Prudhomme was in arrears other than the $1,000.00 in attorney fees, to which she responded: "It's about $3,142.50, I believe."

The trial court ordered that Mr. Prudhomme pay Ms. Prudhomme $3,142.50 in arrearage. As there is no documentation or evidence in the record to support this figure, it appears that the trial court relied solely on the testimony offered by Ms. Prudhomme. We note that during the contempt hearing, Mr. Prudhomme entered into evidence a copy of a $3,000.00 check and a copy of a letter indicating the mailing of a $3,5000.00 check to Ms. Prudhomme. However, Mr. Prudhomme did not offer that evidence as a means of disputing Ms. Prudhomme's calculation of the remaining arrearage. According to Mr. Prudhomme, that evidence was to show that he made an

initial payment of $3,500.00 and that pursuant to the settlement agreement, the remaining arrearage was extinguished when he tendered a $3,000.00 check. He did not offer testimony concerning the amount owing in arrearage in the event that the settlement agreement was found to be invalid.

In *Safeco Insurance Co. of America v. Chrysler Corp.*, 01-1641, p. 35 (La.App. 3 Cir. 7/31/02), 834 So.2d 1026, 1048, this court stated that "[i]t is within the province of the trier of fact to weigh credibility and to accept or reject the testimony of any witnesses." Furthermore, the trial court's finding of fact will not be overturned in the absence of manifest error. *Gerace v. Gerace*, 05-1300 (La.App. 3 Cir. 4/5/06), 927 So.2d 622.

Given the unique circumstances of this case, we find no error in the trial court's determination that Ms. Prudhomme's testimony was credible as it related to the amount of arrearage owed. Nor do we find error in the trial court's ordering Mr. Prudhomme to pay the amount Ms. Prudhomme concluded was owed, namely $3,142.50.

With regard to the $1,000.00 in attorney fees, we find that the trial court was not manifestly erroneous in ordering that Mr. Prudhomme pay them. Even if the attorney fees were credited against the $3,500.00 payment to Ms. Prudhomme, as Mr. Prudhomme alleges, the fact would remain that Ms. Prudhomme did not receive that $1,000.00 toward the arrearage. Therefore, Mr. Prudhomme is responsible for the $1,000.00 attorney fee.[3]

This assignment is without merit.

---

[3] Because Mr. Prudhomme has not contested the $500.00 in attorney fees or court costs awarded in the January 31, 2006 judgment, we do not address them.

**DECREE**

For the above reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed against the defendant, Sammy Curtis Prudhomme.

**AFFIRMED.**