STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

BENJAMIN BRIAN HULSHOFF

VERSUS

JENNIFER MARIE HULSHOFF

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-2272
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

**Randy J. Fuerst**
**Fuerst Law Firm**
**130 W. Kirby Street**
**Lake Charles, LA   70601**
**(337) 436-3332**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Benjamin Brian Hulshoff**

**John Green, Jr.**
**1135 Hodges Street**
**Lake Charles, LA   70601**
**(337) 990-0060**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jennifer Marie Hulshoff**

**AMY, Judge.**

This case arises from a custody dispute between the parties. As part of their divorce proceeding, the parties entered into a stipulated judgment which addressed custody and visitation with regard to their two minor children. The plaintiff later sought, among other things, a change in custody and a restraining order preventing the defendant from moving to Florida with the children. Despite the existence of a restraining order, the defendant moved to Florida with the children. After a hearing, the trial court found that the stipulated judgment did not permit the defendant to move out of state with the children and that the defendant was in bad faith. The trial court ordered that the children be returned to the State of Louisiana. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The plaintiff, Benjamin Brian Hulshoff, and the defendant, Jennifer Marie Hulshoff, were married in 2004. The parties have two minor children. According to the record, in 2009, after some marital discord, Ben asked Jennifer for a divorce. According to Ben's testimony, Jennifer did not want to get a lawyer because of the expense, so she drafted the divorce documents, including, as relevant to this case, joint stipulations and an associated stipulated judgment regarding custody and support. On May 11, 2009, Ben filed a petition for divorce under La.Civ.Code art. 102.[1] The stipulated judgment was signed by the court on that date. No appeal of the stipulated judgment was taken.

---

[1] Louisiana Civil Code Article 102 provides:

> Except in the case of a covenant marriage, a divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that the requisite period of time, in accordance with Article 103.1, has elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least the requisite period of time, in accordance with Article 103.1, prior to the filing of the rule to show cause.

On September 16, 2009, Ben filed an amended petition and rule for modification, seeking, among other requests, to modify the stipulated judgment to reflect that Jennifer could not move out of Louisiana with the children. The trial court issued a restraining order on that date reflecting that the children could not be removed from Calcasieu Parish and setting a hearing on the matter. Jennifer subsequently filed an exception of res judicata asserting that the stipulated judgment permitted her to move out of state with the children.

The record indicates that Jennifer and the children moved to Florida on October 8, 2009,[2] while the restraining order was still pending and without notifying Ben. Ben filed a second amended petition on October 19, 2009, which sought, among other things, nullification of the stipulated judgment, a change in custody, and the return of the children. In response, Jennifer re-urged her exception of res judicata and asserted an exception of no cause of action.

After a hearing on the custody issues, the trial court found that the stipulated judgment was not a nullity, but that it did not provide express written consent for Jennifer to move out of Louisiana with the children. The trial court therefore found that the Louisiana relocation statutes, La.R.S. 9:355.1 *et seq.*, were applicable. After making lengthy findings of fact, the trial court determined that Jennifer was in bad faith in moving to Florida. Accordingly, the trial court entered judgment ordering that the children be returned to Moss Bluff, Louisiana and that Ben and Jennifer have "joint care, custody and control" of the children. Finally, the trial court ordered that Jennifer be named domiciliary parent if she relocated to

The motion shall be a rule to show cause filed after all such delays have elapsed.

[2] The testimony indicates some confusion about whether Jennifer actually left for Florida on October 7 or October 8, 2010. Whatever the date, the record indicates that Jennifer left the same day that the sale of the parties' house closed, which was a Wednesday. A series of text messages entered into evidence indicate that Jennifer told Ben that he could take the children to dinner that night.

Moss Bluff with the children. If Jennifer did not relocate with the children, Ben was to be named domiciliary parent.

Jennifer appeals,[3] asserting as error that:

1) The Trial Court failed to dismiss the suit for return of the children to the State of Louisiana filed by BENJAMIN on October 16, 2010. The issue of her initial relocation was already decided in the Judgment from May 11, 2009. The Trial Court erred in not granting the Exceptions of Res Judicata.

2) The Trial Court erred in applying the terms of the relocation statute, LSA-R.S. 9:355 et seq[.] to this case. The parties had already entered into an agreement regarding relocation of the children, which was contained in the Judgment dated May 11, 2009 and LSA-Art. 9:355.2(B) specifically provides that the Relocation Statute 9:355 et[] seq., does not apply when it conflicts with an existing custody order that governs relocation of the child.

3) The Trial Court erred in finding that JENNIFER was in bad faith in relocating the children to Florida.

**Discussion**

*Res Judicata*

Jennifer asserts that, because the joint stipulations and the accompanying consent judgment contained a provision permitting her to relocate to Florida with the children, the trial court erred in denying her exception of res judicata.

The doctrine of res judicata is codified in La.R.S. 13:4231, *et seq.* Essentially, the doctrine states that:

> a valid final judgment is conclusive between the parties, and all causes of action arising out of the transaction or occurrence that is the subject of the suit are extinguished and merged into a judgment in favor of the plaintiff, or are extinguished and merged into a judgment in favor of

---

[3] Jennifer also applied for supervisory writs, which were filed on July 19, 2011 under Docket No. 11-888. A ruling was subsequently issued on July 27, 2011, which stated:

> **WRIT GRANTED**. This court grants this writ application for the limited purpose of ordering the consolidation of the writ application with the appeal, filed on May 27, 2011, to be lodged in this court. If the referenced appeal is withdrawn or dismissed, the relator's counsel is hereby ordered to notify this court within ten days of such event. Briefing and oral argument will be set according to the rules regarding appeals. Further, we hereby order a stay of the trial court's ruling of May 16, 2011.

3

the defendant as to preclude subsequent action.

*Riche v. Riche*, 09-1354, p. 5 (La.App. 3 Cir. 4/7/10), 34 So.3d 1004, 1008. Thus, subsequent relitigation of any issue that was actually litigated and determined is barred, if that determination was essential to the judgment. *Id.*

However, the doctrine of res judicata is not generally applicable to child custody and child support decrees. *Granger v. Granger*, 11-77 (La.App. 3 Cir. 6/15/11), __ So.3d __, *writ denied*, 11-1882 (La. 9/16/11), __ So.3d __. *See also Hansel v. Hansel*, 00-1914 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, *writ denied*, 01-3365 (La. 3/8/02); *Kleiser v. Kleiser*, 619 So.2d 178 (La.App. 3 Cir. 1993). Thus we find no error in the trial court's denial of the exception of res judicata.

*Applicability of the Relocation Statutes*

Jennifer contends that, because an express written agreement concerning the relocation of the children existed, the trial court erred in applying the Louisiana relocation statutes, La.R.S. 9:355.1 *et seq*. The relocation statutes provide a framework for the relocation of a child's residence outside the state, or, if there is no court order addressing custody, more than 150 miles within the state from the non-relocating parent, or, if there is a court order addressing custody, more than 150 miles from the domicile of the primary custodian at the time the decree was rendered. *See Gathen v. Gathen*, 10-2312 (La. 5/10/11), 66 So.3d 1. However, La.R.S. 9:355.2(B) provides that, "[t]o the extent that a provision of this Subpart conflicts with an existing custody order, this Subpart shall not apply to the terms of that order that governs relocation of the child." Further, Article 355.2(C)(1) provides that the relocation statutes do not apply when "[t]he parents of a child have entered into an express written agreement for a temporary relocation of that child's principal residence, regardless of the duration of the temporary relocation."

Thus, we must first determine whether the stipulated judgment constitutes an

4

existing custody order permitting Jennifer to relocate to Florida with the children.[4] "A consent judgment is a bilateral contract between the parties by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss." *Horrigan v. Horrigan*, 10-1377, p. 5 (La.App. 1 Cir. 6/14/11), __ So.3d __, __. *See also Lytle v. Commercial Ins. Co. of Newark, N.J.*, 285 So.2d 289 (La.App. 3 Cir. 1973). As a consent judgment is a type of contract between the parties, its interpretation is governed by the determination of the common intent of the parties. *Horrigan*, __So.3d__. Thus, "when the words of the contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract." *Id.* at __. *See also* La.Civ.Code arts. 2045 and 2046.

Although extrinsic evidence is normally inadmissible to explain, expand, or contradict the terms of a contract, where the terms of the agreement are unclear, the court may consider extrinsic evidence to explain the terms of the agreement and to determine the parties' intent. *Prudhomme v. Prudhomme*, 06-516 (La.App. 3 Cir. 9/27/06), 941 So.2d 102. The trial court's finding as to the intent of the parties is a finding of fact subject to the manifest error standard of review. *Angelo & Son, Inc. v. Rapides Bank & Trust Co. in Alexandria*, 95-992 (La.App. 3 Cir. 4/10/96), 671 So.2d 1283, *writs denied*, 96-1173, 96-1204 (La. 6/21/96), 675 So.2d 1083).

Jennifer contends that the stipulated judgment contains an express written agreement permitting her to relocate, along with the children, out of the State of Louisiana. A review of the record reveals that the stipulated judgment provides, in part, that:

---

[4] Because language of the accompanying judgment mirrors that of the joint stipulations, we need not address the interpretation of the judgment and the joint stipulations separately. Further, although La.R.S. 9:355.2(C) addresses "temporary" relocations, because we find that neither the joint stipulations nor the stipulated judgment contain a provision permitting Jennifer to relocate the children to Florida, we do not address whether that relocation falls within its ambit.

> [T]he Wife and minor children will be permitted to move in and out of the State of Louisiana after a period not to exceed seven months from the date of this petition is filed or when the property located at 1141 Campfire Road has sold, whichever is sooner. During this period, the Husband will maintain all household expenses including the mortgage payment, utilities, groceries and all other day to day household expenses. During this period, the Husband will pay, to the Wife, $800 monthly for support.

Although Jennifer contends that this provision specifically permits her to "move" out of Louisiana, we find no error in the trial court's determination that the terms of this provision do not clearly and explicitly permit Jennifer to relocate, with the children, out of the State of Louisiana.

Thus, extrinsic evidence is admissible to consider the intent of the parties and explain the terms of the agreement. *Prudhomme*, 941 So.2d 102. In its reasons for judgment, the trial court summed up the testimony regarding the intent of the parties, stating:

> After hearing all of the evidence, it is clear that the parties do not agree on much of anything. They do not agree on what the pertinent provision of the agreement says or on their intent behind the provision. Ben testified that Jennifer drafted the agreement, including the language about "moving in and out." He said they never discussed her moving to Florida and never discussed what language "moving in and out" actually meant. His understanding was that the language was there so that she could go back and forth to visit her family in Florida. The testimony indicated that the parties often traveled back to Florida in the past. Ben also explained that the seven month[s] referenced in the agreement had to do with the sale of the house and the amount he was paying her for support, not a move out of state.

> Jennifer maintains that the intent when the agreement was drawn up was that she would go to her home town in Florida. She believes the whole agreement is valid and should be complied with and enforced by the Court.

> Jennifer alleges that Ben knew she was moving to Florida. The Court makes note of the time line. Jennifer left on October 8, 2010, a Wednesday night that Ben was suppose[d] to have visitation with the children. Prior to this date, Jennifer told him she was looking for a job here in the banking industry. She also told him she was looking for a place to live and would be moving into an apartment [that] their son's teacher helped her line up.

6

Jennifer intentionally lied to him leading him to believe that he would have visitation as scheduled on October 8, 2010, even telling Ben that he needed to have them home early because it was a school night. Therefore, when he text[ed] her about his visitation on Wednesday and where to pick them up, she said she would get directions to the apartment for him. They also had the closing on the sale of their house set for that date, which Jennifer did not appear for. Instead, Jennifer had left town with the children without giving Ben any notice as required by the Relocation Statute. Ben received a call from the children's school the following day because Jennifer had not notified the school the children would be leaving town.

This Court believes that if she was confident the agreement permitted her to leave, why did she need to keep her move on that day a secret from Ben. Although she maintains it was because he had previously obtained a restraining order preventing her from leaving and she thought he would do that again, the Court finds her behavior questionable.

The Court is not convinced that the language "move in and out" meant that Jennifer could actually move the children's residence in and out of Louisiana. The Court finds it more likely meant she could physically move with the children in and out for travel. It is also completely inconsistent that the agreement would allow her to move with the children to Florida, but somehow contain a provision that provides alternating weekend visitation for Ben and the children. Jennifer even testified that the weekend visitation was only Saturday and Sunday, which makes her position even more implausible.

Thus, the trial court found that the language of the stipulated judgment was not clear and did not provide for relocation of the children to Florida.

Our review of the record supports the trial court's finding that the language of the stipulated judgment was not intended to permit Jennifer to relocate to Florida with the children. The trial court was in the best position to view the witnesses and make credibility determinations. *See Long's Preferred Products, Inc. v. Minton*, 03-1020 (La.App. 3 Cir. 2/18/04), 866 So.2d 1065, *writs denied*, 04-625, 04-748 (La. 4/30/04), 872 So.2d 492, 500. We especially note that Jennifer's own testimony supports the trial court's findings that her actions were not consistent with her assertion that the agreement permitted her to relocate.

Furthermore, we find no error in the trial court's determination that the stipulated judgment (and the accompanying joint stipulations) did not contain a provision permitting Jennifer to relocate to Florida with the children. Therefore, the exceptions to the applicability of the relocation statutes delineated in La.R.S. 9:355.2 are inapplicable because there was no judgment concerning the relocation of the children nor was there an express written agreement concerning the relocation of the children. Accordingly, we find no error in the trial court's application of the relocation statutes, La.R.S. 9:355.1 *et seq*.

This assignment of error is without merit.

*Bad Faith*

Finally, Jennifer contends that the trial judge erred in finding her in bad faith in moving the children to Florida. Based on her assertion that the trial court committed an error of law in finding her in bad faith, Jennifer requests that this court apply the *de novo* standard of review with regard to this issue.

Louisiana Revised Statutes 9:355.13 provides that a parent seeking relocation must prove that (1) that the proposed relocation is in good faith and (2) that the proposed relocation is in the best interest of the child. "A trial court's decision in a relocation matter is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion." *Jarnagin v. Jarnagin*, 09-903, p. 2 (La.App. 3 Cir. 12/9/09), 25 So.3d 1028, 1030 (citing *Curole v. Curole*, 02-1891 (La. 10/15/02), 828 So.2d 1094). Accordingly, we do not review this issue under the *de novo* standard, as requested by Jennifer.

The trial court found that Jennifer's stated reasons for moving to Florida were "not legitimate" and that her move was not in good faith. Specifically, the trial court found that "[t]he testimony indicated that Jennifer chose to move because that is what she wanted to do. There was no benefit to the children, and

8

really no clear benefit to her." A review of the record reveals that Jennifer testified that she moved to Florida because she did not have enough money to stay in Louisiana and to be closer to her family. Jennifer testified that several relatives live near her in Florida, including her mother, her grandmother, and her son from a previous marriage.

In its reasons for ruling, the trial court expressed concern that Ben testified that he told Jennifer that moving to Florida was not in the children's best interest and that she responded that it was in her best interest. Further, one of Jennifer's stated reasons for moving was that she could not afford to stay in Lake Charles. However, she conceded that she had enough money to pay for a year's worth of rent. Moreover, the record indicates that, in addition to these savings, Jennifer was receiving child support from Ben. She also testified that she asked Ben for additional funds and that he refused her request. She also testified that, even if Ben had given her the additional funds, she would have moved as soon as the restraining order was lifted.

Furthermore, Jennifer's testimony concerning her actions before and after her move to Florida provide additional support for the trial court's finding that her stated reasons for moving were not sufficient. We note that, as previously discussed, as the finder of fact, it is within the purview of the trial court to make credibility determinations. *See Long's Preferred Prod., Inc.*, 866 So.2d 1065. Although Jennifer maintained that the stipulated judgment permitted her to move to Florida, when she actually left there was a restraining order in effect which specifically prohibited her from removing the children from Calcasieu Parish.[5]

---

[5] Jennifer's Answer, filed on February 18, 2010, indicates that the restraining order was issued on September 16, 2009 and withdrawn on October 27, 2009. The trial court found that Jennifer moved to Florida on October 8, 2009, while the restraining order was still in effect. However, pursuant to an agreement between the parties, Ben did not seek to have Jennifer held in contempt for violation of the restraining order.

Further, the trial court found that Jennifer intentionally concealed her move from Ben, and a review of the record supports this finding.

Jennifer testified at the hearing that Ben was aware that she intended to move to Florida. Ben testified that he did begin to suspect that Jennifer intended to move to Florida some three months after the stipulated judgment was entered. Emails and text messages submitted into evidence indicate that, around this time, when Ben asked directly Jennifer whether she intended to move to Florida, Jennifer equivocated. Ben also testified that Jennifer told him that she had been looking for a job in Louisiana and that their son's teacher had helped her obtain an apartment. Further, although Jennifer asserted that her "position was to return to our home state of Florida," she also testified that she considered applying for a job in Washington, D.C.

The trial court assigned particular weight to Jennifer's concealment of her actual move. We note that Jennifer conceded that she told Ben that he could have visitation with his children in the afternoon of October 8, 2009, but that she had already left the state by that morning. According to Jennifer's testimony, she was aware that there was a restraining order in effect preventing her from removing the children from Calcasieu Parish. She asserted that she was afraid that if she told Ben that she was leaving, Ben would "physically try to stop" her. Further, Jennifer conceded that she did not notify her son's school of the date of her move, although she asserted that the school was aware that she intended to move at some unspecified future time.

We find no abuse of discretion in the trial court's finding that Jennifer was not in good faith in relocating to Florida. As discussed above, there is ample support in the record for the trial court's determination that Jennifer's reasons for moving to Florida were not sufficient. We note that Jennifer also contends that the

10

trial court erred in failing to address the relocation factors listed under La.R.S. 9:335.12. However, because the trial court found that Jennifer did not meet her burden of proof with regard to the good faith element, as required by La.R.S. 9:355.13, there was no reason for the trial court to discuss these factors.

This assignment of error is without merit

## DECREE

For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. The stay previously issued in Docket No. 11-888 on July 27, 2011 is hereby lifted. Costs of this proceeding are assessed to the defendant, Jennifer Marie Hulshoff.

**AFFIRMED.**