McDonald, j.
| ¡¡In this appeal, a mother challenges a stipulated judgment: (1) granting her former husband the right to claim their minor daughter as a dependent for tax purposes during odd numbered years, and (2) replacing the services of a parenting coordinator with the use of a co-parenting website. For the following reasons, we reverse in part and affirm in part.
FACTUAL AND PROCEDURAL BACKGROUND
Micah Catalanotto and Telicia Catala-notto, now Telicia Basso, married in 2002; became parents to a daughter, Jayde, in 2007; and divorced in 2008. Since that time, multiple judgments have been rendered addressing the respective rights of Mr. Catalanotto and Mrs. Basso regarding Jayde’s custody. In April 2010, this court affirmed a July 1, 2009 judgment continuing Mrs. Basso’s sole custody of Jayde and continuing Mr. Catalanotto’s right to periodic, supervised visitation with Jayde. Catalanotto v. Catalanotto, 09-2158 (La.App. 1 Cir. 4/30/10), 2010 WL 1740601 (unpublished opinion).
In 2013, Mr. Catalanotto filed a motion to modify custody, and Mrs. Basso filed a motion to substitute the parenting coordinator to whom the trial court had previously ordered the parties to report.[1] On June 28, 2013, the trial court held a hearing at which these, as well as other, issues were addressed. During Mrs. Basso’s testimony, the trial court stopped the hearing, held a bench conference, and called a *465 recess. When the hearing resumed, Mr. Catalanotto’s attorney indicated the parties had agreed to enter into a stipulation and recited several stipulations into the record. Mrs. Basso’s attorney objected to certain stipulations, the attorneys argued their respective positions, and the trial court responded to them. At the end of the hearing, the trial court directed Mr. Catalanotto’s attorney to reduce the stipulations to writing; he agreed |sand stated that he would forward the writing to Mrs. Basso’s attorney for review.
After receiving the proposed judgment, Mrs. Basso’s attorney wrote two letters to Mr. Catalanotto’s attorney in early August 2013, specifically objecting to multiple portions of the document as containing language that was different from the stipulations agreed upon at the hearing. Mr. Catalanotto’s attorney did not revise the proposed judgment, but instead submitted it to the trial court as originally drafted, along with copies of Mrs. Basso’s attorney’s objections. Mrs. Basso’s attorney responded with a letter addressed to both the trial court and Mr. Catalanotto’s attorney in early September 2013, again objecting to the content of the proposed judgment, and seeking a hearing to address the matter.
On September 30, 2013, the trial court signed a “Stipulated Judgment,” primarily detailing Mr. Catalanotto’s visitation rights with Jayde and the parties’ respective holiday physical custody schedule. Of relevance here, the judgment also included: (1) an order granting Mr. Catalanotto the right to claim Jayde as a dependent for tax purposes in odd numbered years, beginning with tax year 2013; and (2) a provision replacing Dr. Steven Thompson, the parties’ parenting coordinator, with the use of the “OUR FAMILY WIZARD” internet program as the means by which the parties were to discuss all matters pertaining to Jayde.
On October 8, 2013, Mrs. Basso filed a motion for new trial, arguing that the September 30, 2013 judgment was clearly contrary to the law and evidence, contained items that were not discussed at the June 28, 2013 hearing or thereafter, and also contained items that she had specifically opposed, at the hearing. The trial court held a hearing on the motion for new trial, agreed to review the June 28, 2013 transcript and to draft a judgment in accordance with it, and took the matter under advisement. The parties then filed memo-randa in support of their respective positions. On January 6, 2014, the trial court signed a judgment stating that it saw no reason to make changes to the September 30, 2013 judgment, because it was “in compliance with” the June 28, |42013 hearing transcript.[2] Mrs. Basso appealed.
On appeal, Mrs. Basso contends the trial court erred by signing the disputed stipulated judgment and denying her motion for new trial, because the judgment: (1) incorrectly granted Mr. Catalanotto the tax deduction for odd years, and (2) eliminated the parenting coordinator. According to Mrs. Basso, these provisions were not part *466 of the stipulations to which the parties agreed at the June 28, 2013 hearing.
DISCUSSION
The open court recitations, by which parents or former spouses agree to stipulations offered by their respective attorneys regarding issues of child support or community property, constitute a binding compromise. See Guidry v. Blanchard, 13-1095 (La.App. 3 Cir. 3/5/14), 134 So.3d 182, 184 (child support); Thomas v. Williams, 48,003 (La.App. 2 Cir. 5/15/13), 115 So.3d 715, 720 (child support); Reon v. Reon, 07-1277 (La.App. 3 Cir. 4/2/08), 982 So.2d 210, 211 (community property); Carlin v. Wallace, 00-2892 (La.App. 1 Cir. 9/28/01), 809 So.2d 1017, 1021 (community property). A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. LSA-C.C. art. 3071. It shall be made in writing or recited in open court. LSA-C.C. art. 3072. A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. LSA-C.C. art. 3076. A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. LSA-C.C. art. 3082.
When provisions of a compromise set forth in a written judgment do not accurately reflect the intent of the parties as indicated by the transcript of the stipulations recited in open court, those provisions are unenforceable. See Guidry, 134 So.3d at 185-86 (portion of judgment regarding father’s obligation for child support arrearages vacated as not accurately reflecting intent of the parties as clearly indicated by transcript); Reon, 982 So.2d at 212-13 (portions of judgment as to certain rights of spouses in community property partition vacated when transcript of oral stipulations contained no mention whatsoever of those rights); Carlin, 809 So.2d at 1022 (portion of judgment reserving former spouses’ claims for social security benefits in the other’s name reversed because not in conformity with oral stipulation). A trial court’s finding as to the scope of such a compromise is a factual finding subject to the manifest error standard of review. See Hulshoff v. Hulshoff, 11-1055 (La.App. 3 Cir. 12/7/11), 81 So.3d 57, 62; Williams v. Williams, 12-0281 (La.App. 1 Cir. 11/14/12), 2012 WL 5506669, *2 (unpublished opinion); Drapcho v. Drapcho, 05-0003 (La.App. 1 Cir. 2/10/06), 928 So.2d 559, 564-65, writ denied, 06-0580 (La.5/5/06), 927 So.2d 324.
We first address Mrs. Basso’s argument regarding the September 30, 2013 judgment’s elimination of the parenting coordinator. This particular provision of the judgment reads, in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Dr. Steven Thompson is relieved of his duties as parenting coordinator. In lieu thereof, the parties shall utilize the “OUR FAMILY WIZARD” internet program to discuss all matters pertaining to the minor child.
Our review of the June 28, 2013 hearing transcript indicates that, during Mr. Cata-lanotto’s attorney’s recitation of the parties’ stipulations, Mrs. Basso’s attorney objected when Mr. Catalanotto’s attorney stated that they were agreeing to remove Dr. Thompson as the parenting coordinator. The following dialogue[3] occurred:
Mr. Oglesbee: All right. We’re also going to remove Dr. Thompson as the parenting coordinator.
*467 Mr. Brown: That is not what we agreed to, Judge.
The Court: I’m sorry?
Mr. Brown: I think we asked that at the bench, and the court stated that we’re going to hold off on that for a while. My motion was to replace the parenting coordinator, not to leave the parties without a parenting coordinator.
lfiThe Court: Well, sooner or later, these people are going to have to take care of this themselves. When they got up here today, I didn’t see any problem. He wants his visitation. She says she wants him to have it. What are we doing here?
[The Court addresses the parties directly regarding their roles as parents.]
[[Image here]]
The Court: Well, I would suggest that you all communicate through ... email, because that has no feelings in it.
Mr. Catalanotto: Dr. Thompson said something about WIZARD.
The Court: WIZARD is the best.
Mr. Catalanotto: That’s what Dr. Thompson said.
The Court: Do you know what WIZARD is[?]
[Mrs. Basso]: No, ma’am.
The Court: It’s a program for parents who are co-parenting their child that don’t live together. It has everything in it. You have to share the school things. Anytime the child is in a play or something, you have to tell them.
Mr. Brown: Can we put that as part of the order, Judge[?]
* * *
The WIZARD? Yes.
Mr. Brown: We can put that as part of the order that the parties go to the— that they communicate through OUR-FAMILYWIZARD. COM.
Mr. Catalanotto: Yeah, that’s fine.
Mr. Oglesbee: If they equally share the costs, that’s fine.
The Court: Do you know WIZARD?
Mr. Oglesbee: Yes, ma’am. I do. And I think it’s a good tool.
The Court: I do, too. It’s excellent.
[[Image here]]
Mr. Oglesbee: Yes. It’s an excellent opportunity for the parties to communicate with each other. And if there’s a disagreement down the road, the court would have an opportunity to review whether or not they actually did communicate.
[At this point, the dialogue switched to other issues.]
|7After a thorough review of the transcript, Mrs. Basso’s letters objecting to the elimination of the parenting coordinator, as well as the parties’ memoranda regarding the new trial, we conclude the trial court did not manifestly err in interpreting the above dialogue as an indication that the parties agreed to use the “OUR FAMILY WIZARD” internet program in lieu of, rather than in addition to, the parenting coordinator’s services. The trial court had a reasonable basis to conclude that Mrs. Basso’s attorney’s request that the stipulated judgment include a provision requiring the parties to communicate via the “OUR FAMILY WIZARD” program included an agreement to discontinue Dr. Thompson’s services. Although the dialogue could be interpreted differently, the trial court was in the best position to determine the intent of the parties at the hearing and the scope of their compromise. Drapcho, 928 So.2d at 565; Hulshoff, 81 So.3d at 64. Mrs. Basso’s argument to the contrary is without merit.
*468 On the other hand, we reach a different conclusion regarding the provision in the stipulated judgment granting Mr. Catalanotto the right to claim Jayde as a dependent for tax purposes in odd numbered years, which reads:
IT IS FURTHER ORDERED that MICAH CATALANOTTO shall claim the minor child for state and federal tax purposes during odd-numbered years, commencing tax year 2013 and TELI-CIA BASSO claiming the minor child for state and federal tax purposes during the even-numbered years, commencing tax year 2014.
We note that this issue was not before the court, nor was it discussed at all, at the June 28, 2013 hearing; hence, there was no open court recitation regarding the tax deduction that would have made this issue a part of the compromise reached between Mr. Catalanotto and Mrs. Basso. As stated in LSA-C.C. art. 3076, a “compromise settles only those differences that the parties clearly intended to settlef.]” There is no evidence in the transcript that Mr. Ca-talanotto and Mrs. Basso agreed at the June 28, 2013 hearing to alternating years of claiming Jayde as a dependent for tax purposes. The trial court manifestly erred in finding otherwise. We thereby reverse the judgment |sas to that provision and strike it from the September 30, 2013 judgment.[4] Accord Guidry, 134 So.3d at 185-86; Reon, 982 So.2d at 212-13; and Carlin, 809 So.2d at 1022.
CONCLUSION
For the above reasons, we reverse the September 30, 2013 judgment insofar as it ordered that Micah Catalanotto claim the minor child for state and federal tax purposes during odd-numbered years, commencing tax year 2013, and that Telicia Basso claim the minor child for state and federal tax purposes during even-numbered years, commencing tax year 2014. This provision is stricken from the judgment. In all other respects, the judgment is affirmed. Costs of the appeal are assessed 50% to Micah Catalanotto and 50% to Telicia Catalanotto Basso.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.

. Parenting coordination is a child-focused alternate dispute resolution process in which a duly qualified parenting coordinator assists parents or persons exercising parental authority to implement a parenting plan by facilitating the resolution of their disputes in a timely manner and by reducing their child-related conflict so that the children may be protected from the impact of that conflict. The parenting coordinator assists the parties in promoting the best interests of the children by reducing or eliminating child-related conflict through the use of the parenting coordination process. LSA-R.S. 9:358.1, Comments — 2007, comment (a).

. After Mrs. Basso appealed both the September 30, 2013 and January 6, 2014 judgments, this court issued a rule to show cause order, noting that the January 6, 2014 judgment did not specifically deny the request for new trial. On July 21, 2014, the trial court signed an amended judgment, correcting the decretal language. An order denying a motion for new trial is generally a nonappealable judgment, reviewable only under supervisory jurisdiction for abuse of discretion. However, we conclude that this ruling on Mrs. Basso’s new trial application is part of an unrestricted, overall appeal from a final judgment, and thus is properly before us on appellate review. See Wright v. Bennett, 04-1944 (La.App. 1 Cir. 9/28/05), 924 So.2d 178, 190.

. Mr. Oglesbee is Mr. Catalanotto’s attorney and Mr. Brown is Mrs. Basso’s attorney.

. Mr. Catalanotto argues there has been no change in the parties' right to claim the tax deduction, because the alternating year arrangement has been in place since so ordered in a March 8, 2008 stipulated judgment. He contends the provision was "incorporated into the present judgment, so that all present and existing orders of the court are in one judgment due to the fact that this case has had several intervening judgment[s] causing confusion for the parties.” Because the parties did not stipulate to include the tax provision in the September 30, 2013 judgment, Mr. Catalanotto's attorney did not have authorization to include it as a stipulation.